UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------------X

ABDOUL MOYENGA and EDWIN SANTANA,
individually and on behalf of all others similarly
situated,

**CLASS ACTION COMPLAINT**

Plaintiffs,

-against-

**JURY TRIAL DEMANDED**

WESTCHESTER COUNTY and LEANDRA
EUSTACHE, in her official capacity as Chair/Chief
Executive Officer of the Westchester Taxi and
Limousine Commission,

Defendants.
X------------------------------------------------------------------------X

Plaintiffs Edwin Santana and Abdoul Moyenga, by their attorneys Daniel Ackman and Daniel Bach, for their Complaint allege as follows:

## NATURE OF THE ACTION

1. This action concerns the policy and practice of the Westchester County Taxi and Limousine Commission (the "WTLC"), an agency of Defendant Westchester County ("Westchester" or "the county"), of seizing and impounding for-hire vehicles without a warrant. These seizures are based either on the WTLC's so called Vehicle Immobilization Program ("VIP program" or "program"). This program purports to allow the WTLC to place a boot and then impound any for-hire vehicle ("FHV") even where the driver has not been deemed unsafe to drive, where the vehicle itself is not unsafe, where the vehicle in not contraband, where the vehicle has not been used as an to facilitate a crime and even where the owner of the vehicle has not failed to pay any civil penalties to the county and has not failed to answer a summons.

Amazingly, WTLC claims the right to suspend even where it does not allege that the driver violated any rule or law. Instead, the WTLC claims the right to seize a vehicle based on $1000 or more in civil penalties allegedly owed or five summonses unanswered by a driver or base station with whom the owner is affiliated, even where, as in this case, the vehicle owner has no legal, financial or ethical responsibility for those penalties or for those summonses.

2. In other words, Westchester claims the authority to seize a FHV even where the driver and owner are guilty of no wrongdoing and have not even been accused on any conduct that would justify a seizure.

3. The WTLC claims the right to seize and in fact does seize vehicle only because an innocent owner is vehicle is affiliated with base station that owes $1000 in fines or has five unanswered summonses. It does so even if the vehicle owner has no legal, financial or ethical responsivity for those fines (or those summonses). By the same token, the Westchester claims the authority to seize a vehicle being driven by an innocent taxi driver based on fines owed by the vehicle owner or even the vehicle's base station even if the driver has no legal (or financial or ethical) responsibility for those fines.

4. The WTLC seizes vehicles without any prior notice or a hearing that would determine the lawfulness of the seizure.

5. The WTLC seizes vehicles even where there is no allegation (and certainly no showing) that the driver is unsafe to operate the vehicle, that the vehicle is itself unsafe, or that the vehicle was use as the instrumentality of a crime.

6. Once the car is seized, Westchester affords neither the innocent owner or driver the right to a hearing to seek its return. The only way the vehicle owner or driver can secure the

vehicle's return is if the innocent owner or driver pays the outstanding fines issued to a third party who the owner/driver neither owns not controls.

7. The WVIP is unconstitutional on its face and in practice. It violates the Fourth Amendment and Article I, Section 12 of the New York State Constitution. The WTLC seizes vehicles even in the absence of a warrant issued by a magistrate and where there is no applicable exception to the warrant requirement.

8. The program also violates the Due Process Clause of the Fourteenth Amendment. No judicial process is afforded before the WTLC seizes vehicles. The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on a debt allegedly owed by a third party that is not owned or controlled by the vehicle owner.

9. Plaintiffs Abdoul Moyenga and Edwin Santana are victims of these unconstitutional seizures. The WTLC seized their cars without a warrant and without a pre-seizure hearing simply because their base stations— not the vehicle owners— allegedly owned just over $1000 in fines to the WTLC.

10. This action is brought on behalf of the individual plaintiffs named in the caption and on behalf of the FHV owners operating in the county whose vehicles were seized within the three years preceding the filing this complaint through the present day (the "Class Period").

## JURISDICTION AND VENUE

11. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, and 2201.

13. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because the county is in this District, because plaintiffs reside in this district and because a substantial part of the events giving rise to the claims occurred in this District.

**PARTIES**

14. Plaintiff Edwin Santana is a FHV driver and a resident of Bronx County.

15. Plaintiff Abdoul Moyenga is a FHV driver and a resident of Westchester County.

16. Defendant Westchester County is a municipal corporation existing pursuant to the laws of the State of New York. The Westchester Taxi & Limousine Commission is an administrative agency of the County, created by § 123.00 of the Westchester County Administrative Code (the "Code"), and is responsible for the seizures at issue in this action.

17. Defendant Leandra Eustache is the Chair/Chief Executive Officer of the WTLC.

**JURY DEMAND**

18. Plaintiffs demand a jury trial.

**FACTS**

**The WTLC Vehicle Immobilization Program**

19. Westchester County Administrative Code § 270.124(1) purports to authorize the WTLC to "obtain voluntary compliance with this chapter or other applicable law by way of notice, permit, warning or educational means."

20. Code Section 270.124(3) purports to authorize a "Vehicle Immobilization Program" (the "WVIP") by which the WTLC may—without a warrant— apply a vehicle immobilizer may (a/k/a a boot) "to any vehicle whose owner has either … [f]ailed to pay civil penalties resulting from violations of [the code] as against the owner of the vehicle, the driver of the vehicle and/or the owner of the base station where the vehicle is affiliated, which exceed

$1,000; or … the owner of the vehicle, the driver of the vehicle and/or the owner of the base station where the vehicle is affiliated have a "total of five or more unanswered summonses from violations of the For- Hire Vehicle Law."

21. To give context, a base station is, per WTLC rules, "a central facility, which manages, organizes and/or dispatches ForHire Vehicles." A base station owner "is any individual, partnership, corporation, or other entity owning and/or operating a Base Station, including any individuals in a partnership and/or any entities owning ten per centum (10%) or more of any such corporation or legal entity." Under Westchester law, drivers and vehicle owners need not have any ownership or control or the base station that manages or dispatches their vehicles. The rules in New York City are somewhat different, but New York City also does not require that a driver or owner have any management role in or financial obligation to pay debts owed by the base station.

22. Base stations may have hundreds or thousands of affiliated vehicles. Yet the WTLC does not provide any notice to the owners whose vehicles are affiliated with a penalized base that his or her is subject to seizure.

23. The WVIP program purports to allow the county to seize vehicles even where there is no allegation (and certainly no showing) that the driver is unsafe to operate the vehicle, that the vehicle is itself unsafe, or that the vehicle was use as the instrumentality of a crime.

24. In this case, Plaintiffs' vehicles were seized because of civil penalties allegedly owed by base stations Uber USA, LLC, a base affiliated with Uber Technologies, Inc. (Uber), a multinational corporation, and TakeMe2, Inc. (Take Me 2). Uber has more than 72,000 vehicles affiliated with its New York City base. Take Me 2 had, as of October 6, 2022, 2075 vehicles affiliated with its New York City base. Neither Plaintiff has any ownership or control of these

bases. Neither Plaintiff has any financial legal or ethical responsibility for the penalties owed by these bases. (Neither company operates a base in Westchester.)

25. Thus, under WVIP, Westchester, just with respect to these to base stations, claims the right seize any of 74,000 vehicles— without a warrant, without notice and without a hearing— driven and/or owned by individuals who had no legal responsibility for penalties incurred by their base.

26. Section 270.124 requires the WTLC to "notify the owner of the vehicle, the driver of the vehicle and/or the owner of the base station where the vehicle is affiliated, that a vehicle immobilizer may be attached to their vehicle(s) if the outstanding civil penalties are not paid within thirty (30) days or if the unanswered summonses are not finally satisfied within thirty (30) days."

27. Nothing in the code, however, requires any prior notice to vehicle owners where the driver or the base station has incurred the fines or missed hearings.

28. The code also does not require the county to afford the owners of a vehicle facing seizure and impoundment a hearing prior to the seizure.

29. Section 270.124 also permits, law enforcement personnel to tow a vehicle that has been immobilized "for public safety reasons as well as to protect the immobilized vehicle" if "a vehicle is immobilized in a location where it cannot legally remain."

30. It further requires that " [u]pon applying a vehicle immobilizer, the [WTLC] shall provide written notification to the owner of the vehicle and the base station owner to which the vehicle is affiliated, if any, of the procedure by which the outstanding civil penalties or unanswered summonses shall be satisfied and the vehicle immobilizer removed." In addition, the driver of the vehicle, if present, must "be notified immediately following the application of the

vehicle immobilizer of the procedure by which the outstanding civil penalties or unanswered summonses may be satisfied."

31. Finally, the Code states that the WTLC "shall not authorize the release of any immobilized or towed vehicle until … fees, fines, and penalties have been paid in full" including "fees relating to the application of the vehicle immobilizer," fees "relating to transport of any passenger, who was in the vehicle at the time that the vehicle immobilizer was applied" and " "fees for towing … [and] [s]torage" as well as "[t]he underlying fine or civil penalty."

32. Section 270.124(3) is adopted and re-stated by Section 1200 of WTLC For-Hire Rules and Regulations (the "WTLC Rules").

33. In practice, the WTLC—without obtaining a warrant— boots and then tows vehicles where neither the owner nor the driver owes (or is claimed to owe) the County any civil penalty and has failed to answer even a single summons. It routinely does so where the base station where the vehicle is affiliated— and only the base station—is claimed to owe a civil penalty or has unanswered summonses.

34. This practice is unconstitutional. First, as against any alleged violator, there is no constitutionally permitted exception to the warrant requirement allowing for seizure or impoundment of vehicles to secure payment of fines or penalties. Second, as applied against innocent owners of vehicles who owe no fines there is no probable cause to believe that the owner has even violated any county Code provision or WTLC rule.

35. Indeed the WTLC seizes vehicles even where neither the vehicle owner nor the driver owes any fine or penalty (and has not missed any hearings). The agency instead seizes vehicles where the base station is claimed to owe fines or has missed hearings.

36. Such seizure are not permitted by any recognized exception to the warrant requirement.

## The Individual Plaintiffs

Abdoul Moyenga

37. Mr. Moyenga is a for-hire vehicle driver who lives in the Bronx and who works primarily in New York City. He accepts fares through apps like Uber and Lyft.

38. On or about September 23, 2022, Mr. Moyenga had parked his vehicle a Hyundai with NY license plate T767955C at a shopping mall in the county, where Mr. Moyenga exercises at a fitness center. When he returned to the parking lot, county agents were preparing to boot his car.

39. The agents placed an "immobilization notice" on the windshield, which included under "reason for immobilizing" the handwritten words "TLC scofflaw – 89716-22" and "Take Me 2 Inc."[1] The agents also handed him a pre-printed form titled "Westchester County Taxi & Limousine Commission" and subtitled "Vehicle Immobilization Law (Effective January 2, 2007)." The form also included in handwriting "Take Me 2, Inc." a phone number and $10,950, apparently a reference to the debt allegedly owed by Take Me 2, Inc., a NYC base station. The form also included phone numbers for WTLC offices where Mr. Moyenga could determine outstanding fines or arrange for payment.

40. Defendants did not allege that Mr. Moyenga has any unanswered summonses or that he owed any fines or penalties.

---

[1] Though Mr. Moyenga was never informed of the action, counsel has recently learned that the NYC TLC has currently suspended Take Me 2's base license.

41. Defendants did not allege that Mr. Moyenga was unsafe to operate the vehicle, that the vehicle was itself unsafe, or that the vehicle was used as the instrumentality of a crime.

42. Defendants offered Mr. Moyenga no opportunity for a hearing at which he could contest the seizure or regain possession of his vehicle.

43. There was (and is) no allegation that Mr. Moyenga owed any debt to the county.

44. To the extent the seizure was based on unpaid fines assessed to Take Me 2, Inc., Mr. Moyenga is affiliated with that base. But he has no ownership or control of the company and he has no legal, financial or ethical responsibility for the paying fines assessed to that company.

45. This seizure was not permitted by any recognized exception to the warrant requirement.

46. Without access to his vehicle, Mr. Moyenga cannot work. He cannot support his wife and two small children. But he still must make car payments.

47. The county has not yet released Mr. Moyenga's vehicle.

48. This seizure was not permitted by any recognized exception to the warrant requirement.

**Edwin Santana**

49. Mr. Santana is a for-hire vehicle driver who lives in the Bronx and who works primarily in New York City. He accepts fares through commonly used apps like Uber and Lyft.

50. On about September 2, 2022, he was driving his vehicle, a Toyota with NY license plate T104384C in Westchester County when he was stopped by county police officers who issued his summons for a traffic violation.

51. The officers booted his vehicle despite the fact that Mr. Santana was not alleged to owe any fines or penalties to the county.

52. On information and belief, the ground for the seizure were fines allegedly owed by Uber or one of its affiliated corporations.

53. Mr. Santana is not an owner, officer or even an employee of Uber or any Uber affiliate and has no legal, financial or ethical responsibility for Uber's debts, if any, to county and has no legal responsibility for answering any summons issued to Uber or its affiliates.

54. Defendants offered Mr. Santana no opportunity for a hearing at which he could contest the seizure or regain possession of his vehicle.

55. Defendants did not allege that Mr. Santana has any unanswered summonses or that he owed any fines or penalties.

56. Defendants did not allege that Mr. Santana was unsafe to operate the vehicle, that the vehicle was itself unsafe, or that the vehicle was used as the instrumentality of a crime.

57. Without access to his vehicle, Mr. Santana could not work.

58. The county has since released Mr. Santana's vehicle.

59. To reclaim his vehicle, Mr. Santana was required to pay towing and storage charges.

60. This seizure was not permitted by any recognized exception to the warrant requirement.

## Class Action Allegations Related to the Seizures

61. Plaintiffs bring class action claims pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all owners or lessors of vehicles seized by the WTLC or the county pursuant to the WVIP.

62. This case is appropriate for treatment as a class action under Rule 23(b)(1)(A) because the prosecution of separate actions will create the risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendants.

63. This case also should be certified as an injunctive class under Rule 23(b)(2) because Defendants have acted, or failed to act, on grounds generally applicable to the putative class, thereby making appropriate final injunctive relief with respect to the Rule (b)(2) class as a whole.

64. This case also is appropriate for treatment as a damages class under Rule 23(b)(3) because common issues predominate over individual issues, and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

65. The county has seized more than 100 vehicles in the past three years pursuant to the WVIP program where the vehicle owner based on fines or penalties owed by third parties such as drivers and base stations of summonses unanswered by third parties.

66. The class is so numerous that joinder of all members would be impractical. On information and belief the WTLC has seized hundreds of vehicles pursuant to the WVIP despite their owners having no legal responsibility for the payment of fines alleged to be predicates for the seizures.

67. Joinder also is impracticable because, upon information and belief, many members of the class are low-income persons, may not speak English well, and likely would have great difficulty in pursuing their rights individually.

68. There are questions of law and fact common to the class that predominate over questions affecting only individual members, including the core question of the constitutionality

of the WTLC seizure program as applied to the named plaintiffs and the proposed class members.

69. The claims of the class representative are typical of the claims of the class members.

70. The entire class will benefit from the remedial and monetary relief sought by putative class representative(s).

71. The class representative(s) will fairly and adequately protect the interests of the class. There are no conflicts of interest between the class representative(s) and the absent class members, and the class representative will vigorously prosecute this action on behalf of the class.

72. Defendants have consistently acted and refused to act in ways generally applicable to the class.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class are scattered throughout the county New York City and beyond and are not likely to be able to vindicate and enforce their constitutional rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants which would establish incompatible standards of conduct for Defendants; (f) Defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and

appropriate; and (g) questions of law and/or fact common to members of the class, especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

74. There will be no extraordinary difficulty in the management of the class action.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Fourth Amendment – Warrantless Seizure)**

Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

75. The warrantless seizure of Plaintiffs' vehicles violated the Fourth Amendment to the United States Constitution.

76. The warrantless seizure of Plaintiffs' vehicles violated the Fourth Amendment to the Constitution regardless of whether there was probable cause to believe that there had been a violation of the county admonitive code or TLC rules.

77. The warrantless seizure of Plaintiffs' vehicles was unreasonable and was not justified.

78. Defendants have an official policy, practice, and custom of effecting warrantless seizures of vehicles even though such vehicles will not (either as a matter of law or as a matter of practice) be subject to forfeiture.

79. Defendants' policy, practice, and custom of effecting warrantless seizures of vehicles caused Plaintiffs and the class members to be deprived of their Fourth Amendment rights.

80. Defendants acted under color of state and local law.

81. By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which WTLC and county agents routinely seize vehicles without a warrant, without an applicable exception to the warrant requirement, and without any claim of

right to possess the vehicle, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

82. Defendants' actions were deliberate, reckless, and indifferent to Plaintiffs' constitutional rights.

83. As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(New York Constitution Article I, § 12)**

Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

84. The taking of Plaintiffs' vehicles constitutes a seizure under the New York Constitution.

85. Defendants' warrantless seizures, without any right or intent to claim ownership of the vehicles, violates the Article I, § 12 of the State Constitution.

86. Defendants have acted under pretense and color of state and local law.

87. Said acts by said Defendants were without authority of state law and were in abuse of their powers and with the specific intent to deprive Plaintiffs of their constitutional rights secured by New York Constitution.

88. Defendants' actions were deliberate, reckless, and indifferent to Plaintiffs' constitutional rights.

89. As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Fourteenth Amendment – Due Process Clause)**

Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

90. The seizure of Plaintiffs' vehicles violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

91. No judicial process was afforded before the TLC's inspectors seized Plaintiffs or the class members' vehicles.

92. The primary justification for the WTLC's policy and practice of seizing vehicles without judicial process is the ostensible concern that entities that Plaintiffs neither own nor control might not pay a civil fine.

93. The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been issued a civil fine might not pay the fine— especially where, as here, the WTLC had no factual basis to believe that either Plaintiffs or any class member had any legal, financial or ethical responsibility for payment of the fine.

94. Defendants' policy, practice, and custom of seizing vehicles without judicial process in connection with issuing notices of violation of Section 19-506 caused Plaintiffs and the class members to be deprived of their rights under the Due Process Clause of the Fourteenth Amendment.

95. Defendants acted under color of state and local law.

96. By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely seize vehicles without judicial process in order to secure the payment of an alleged but unadjudicated violation, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the Plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

97. Defendants' actions were deliberate, reckless and indifferent to Plaintiffs' legal rights.

98. As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Article I, Section 12 of the New York State Constitution)**

Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

99. The seizure of Plaintiffs' vehicles violated the Due Process Clause of New York Constitution.

100. No judicial process was afforded before the TLC's inspectors seized Plaintiffs or the class members' vehicles.

101. The primary justification for the WTLC's policy and practice of seizing vehicles without judicial process is the ostensible concern that entities that Plaintiffs neither own nor control might not pay a civil fine.

102. The New York Constitution does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been

issued a civil fine might not pay the fine— especially where, as here, the WTLC had no factual basis to believe that either Plaintiffs or any class member had any legal, financial or ethical responsibility for payment of the fine.

103. Defendants' policy, practice, and custom of seizing vehicles without judicial process in connection with issuing notices of violation of Section 19-506 caused Plaintiffs and the class members to be deprived of their rights under the Due Process Clause of the Fourteenth Amendment.

104. Defendants acted under color of state and local law.

105. By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely seize vehicles without judicial process in order to secure the payment of an alleged but unadjudicated violation, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the Plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the New York State.

106. Defendants' actions were deliberate, reckless and indifferent to Plaintiffs' legal rights.

107. As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs and the class members request that the Court grant the following relief:

    a.    An order certifying this action as a class action;

    b.    A judgment declaring that the seizure of Plaintiffs' vehicles violated the federal and New York Constitutions;

    c.    An injunction prohibiting Defendants from engaging further in the policies, practices, and customs complained of herein;

d. Compensatory damages in an amount to be determined at trial, including without limitation all towing and storage costs and other damages proximately caused by the deprivation of Plaintiffs' and the class members' vehicles;

e. Punitive damages in an amount to be determined at trial;

f. An order awarding disbursements, costs, and attorneys' fees; and

g. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 10, 2022

__/s/_____
Daniel L. Ackman
Law Office of Daniel Ackman
26 Broadway, 8th Floor
New York, NY 10004
Tel: (917) 282-8178
dan@danackmanlaw.com

M. Daniel Bach
Law Office of M. Daniel Bach, PLLC
38 West 32nd Street, Suite 1506
New York City, New York 10001
Tel: 212-904-1900
mdaniel@bachlawyer.com

*Attorneys for Plaintiffs*